IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TROY W. YOUNG,

    Plaintiff,

v.                              Civil Action No. 2:13-cv-02796

CAROLYN W. COLVIN,
ACTING COMMISSIONER, SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 16).  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Claimant, Troy W. Young, filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on March 19, 2010, alleging disability beginning January 1, 2009.[1]  Claimant asserts experiencing the following conditions:  bipolar disorder, depression, learning disability, back pain, hearing problems, speech problems and carpal tunnel (Tr. at 281).  The claims were

---

[1] Plaintiff's Brief in Support of Judgment on the Pleadings mistakenly states Claimant's alleged disability onset date as January 1, 2007 (ECF No. 13).  However, the evidence of record demonstrates that Claimant's alleged onset date is January 1, 2009 (Tr. at 153, 157).

1

denied initially on August 13, 2010, and upon reconsideration on October 28, 2010. Thereafter, Claimant filed a written request for hearing on November 22, 2010. Claimant appeared at an administrative hearing held by an Administrative Law Judge on September 29, 2011, in Charleston, West Virginia. A decision denying the claims was issued on October 11, 2011. Claimant's request for review by the Appeals Council was denied on December 20, 2012. Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 26). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative joint disease/strain of the lumbar spine with pain; mild bilateral carpal tunnel syndrome; chronic middle ear disease/tympanic membrane perforation; migraine headaches; borderline intellectual functioning; major depressive disorder; generalized anxiety disorder; panic disorder with agoraphobia; and bipolar II disorder (Tr. at 26-27). At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 28). The ALJ then found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional

limitations[2] (Tr. at 30). The ALJ found that Claimant has no relevant past work (Tr. at 37). The ALJ concluded that Claimant could perform light exertional jobs such as product cleaner, meter reader and price reader. Additionally, the ALJ held that Claimant could perform jobs at the sedentary exertion level such as surveillance systems monitor, inspector/sorter and material handler (Tr. at 38). On this basis, benefits were denied (Tr. at 39).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether

---

[2] Claimant can lift up to twenty pounds occasionally and lift and carry up to ten pounds frequently in light work as defined by the regulations. He may occasionally climb ladders, ropes and scaffolds. He may frequently climb ramps and stairs, bend, balance, stoop, kneel, crouch and crawl. He may frequently engage in fine manipulation with bilateral hands. He must avoid concentrated exposure to extreme cold, vibration, noise and hazards such as moving machinery and unsecured heights. He is fully capable of learning, remembering and performing simple and detailed work tasks involving simple and routine work instructions with no reading requirements above the elementary school level. These tasks should be performed in a relatively static and low stress work environment, defined as one in which there are no strict quota requirements, production pace, strict time standards or over the shoulder supervision. These work tasks should require no fine hearing discrimination. He may have occasional contact with supervisors and coworkers, but should have minimal to no contact with the public. He would perform optimally in small group settings where instructions can be given face to face (Tr. at 30).

the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 16, 1984. Claimant graduated high school and participated in special education classes from first through eleventh grade. During seventh grade, Claimant was in the honor society, played football and wrestled (Tr. at 196). Claimant testified that he has been fired from every job he has held (Tr. at 51). He testified to avoiding people and experiencing panic attacks, which occur when he is around a lot of people in a fast moving environment. He testified that he experiences mood swings, gets depressed sometimes and has no energy during the day. Claimant testified that he collected unemployment benefits from 2009 to 2011, during which time he asserted to being willing to work. However, Claimant only applied for a small number of jobs and was not hired.

Claimant filed DIB and SSI claims alleging disability beginning January 1, 2009. Claimant asserts experiencing the following conditions: bipolar disorder, depression, learning disability, back pain, hearing problems, speech problems and carpal tunnel (Tr. at 281). Claimant's self-reported Work History Report completed on March 17, 2010, states in the Remarks section that he became disabled in 2005, due to an injury and an "illness" (Tr. at 292-299). Claimant's self-reported Function Report[3] states that he cannot work due to a slipped disc in his back, bipolar disorder, anxiety, inability to focus, carpal tunnel syndrome and low intelligence (Tr. at 305).

---

[3] The Function Report is not signed or dated (Tr. at 305-312).

Claimant asserts that the ALJ failed to give adequate weight to the opinion of Tony Goudy, Ph.D. Claimant argues that the ALJ's decision is not based on substantial evidence as the ALJ failed to consider whether Claimant's impairments, in combination, met or equaled any of the Listings. Claimant asserts that the ALJ committed error by failing to determine Claimant met Appendix 1 Listing 12.05C. Claimant asserts the ALJ performed an inadequate analysis of Dr. Goudy's opinion. Claimant argues the ALJ did not evaluate Dr. Goudy's assessment regarding his abilities to perform mental work-related activities. Claimant asserts the ALJ committed reversible error by failing to obtain an updated medical expert opinion. Claimant asserts that the testimony of Mary Buban, Ph.D., at the administrative hearing revealed that she only considered whether Claimant's panic disorder with agoraphobia met a listing. Claimant asserts that Dr. Buban did not consider his mental impairments in combination (ECF No. 13).

Defendant asserts that substantial evidence supports the ALJ's analysis of the relevant medical records and opinions. Defendant argues that the ALJ properly determined that Claimant's impairments did not prevent him from performing work in the national economy (ECF No. 16).

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2013); 20 C.F.R. § 404.1520a (a) (2013). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ

6

determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2013). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2013). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2013). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2013). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2013). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2013). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2013). The ALJ incorporates the findings derived from the analysis in his decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2013).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.04 (Affective Disorders), 12.05 (Mental Retardation) and 12.06 (Anxiety Related Disorders) requirements (Tr. at 28). *See*, 20 C.F.R. 404 Subpart P, Appendix 1. To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked restriction in activities of daily living;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme. On July 26, 2010, reviewing clinical psychologist Jeff Boggess, Ph.D., conducted a mental Residual Functional Capacity (hereinafter, RFC) assessment on Claimant based on his mental health records (Tr. at 493). Based on Claimant's testimony and Dr. Boggess' RFC, the ALJ found that evidence of Claimant's ability to care for himself, drive, shop, pays bill, count change, watch television, make simple meals and perform light chores did not satisfy the Listings requirements to demonstrate marked limitation in activities of daily living. The Claimant reported to going to the grocery store once or twice a month and spending two to three hours. The ALJ found that Claimant had moderate difficulties in social functioning. Claimant's self-reported Function Report and Dr. Boggess' RFC reflect that he spends time with others once a week and also talks to people on the telephone (Tr. at 309, 327-334). With regard to concentration, persistence or pace, Claimant has moderate difficulties. Claimant reported that he watches television and drives an automobile (Tr. at 308, 327-334). As for episodes of decompensation, Claimant has not experienced any. The ALJ found that the evidence

did not satisfy the Listings requirements to demonstrate a mental impairment (Tr. at 29-30).

Borderline Intellectual Functioning

The ALJ did not find that Claimant suffered from a severe impairment of borderline intellectual functioning. Claimant was born on July 16, 1984. In 1993, Claimant underwent intelligence testing in elementary school. His full scale I.Q. score was 73 on the Wechsler Intelligence Scale for Children, Third Edition (hereinafter, WISC-III). In 1994, Claimant was in the 3rd grade and scored a full scale I.Q. of 72 (Tr. at 372). On May 2, 1997, Claimant's full scale I.Q. score was 64 (Tr. at 375). At the time of the psychological evaluation on May 2, 1997, Claimant was in the 6th grade (Tr. at 374). On Claimant's 6th grade transcript for the school year 1996-1997, he received 13 As and 3 Bs in his class subjects. He received a C in chorus (Tr.at 196). On Claimant's 7th grade transcript for the school year 1997-1998, Claimant's activities included football, honor society and wrestling (Tr. at 196). Claimant's 9th grade transcript for the school year 1999-2000, listed Claimant's activities to include junior ROTC leadership. (*Id.*) He graduated high school in 2002 (Tr. at 50, 282). Claimant testified to attempting to take additional classes in history and in a paralegal class after high school (Tr. at 53, 57).

In an Adult Mental Profile assessment completed by Elizabeth Durham, M.A., on June 5, 2006, Claimant's Wechsler Adult Intelligence Scale (hereinafter, WAIS) score included a Verbal I.Q. score of 77, Performance I.Q. score of 73, Full Scale I.Q. score of 73, Verbal Comprehension Index score of 78 and Perceptual Organization Index score of 76 (Tr. at 379). Claimant achieved a full scale I.Q. score of 73. Claimant alleges

9

disability onset date of April 21, 2009, approximately three years after receiving a full scale I.Q. score of 73.

On March 25, 2011, over 2 years after Claimant's alleged disability onset date, Tony Goudy, Ph.D., performed a consultative examination on Claimant. Dr. Goudy noted that Claimant exhibited good personal hygiene and care, he was jittery throughout the assessment, his social skills appeared to be poor, he was argumentative and his affect was restricted (Tr. at 643). Claimant was fully oriented, his immediate memory was intact and his recent memory was moderately impaired. Dr. Goudy opined that Claimant had a marked impairment in concentration. As a result of Dr. Goudy asking Claimant hypothetical scenarios, Dr. Goudy reported Claimant had borderline range intellect and judgment commensurate with limited intellect. Dr. Goudy diagnosed Claimant with panic disorder with agoraphobia, major depressive disorder and generalized anxiety disorder (Tr. at 644). He assigned Claimant a GAF between 50 and 55. Dr. Goudy opined that Claimant had mild to moderate impairments in daily living activities; marked impairment in social functioning; marked impairment in concentration, persistence and pace; and he had not experienced any extended episodes of decompensation. Dr. Goudy diagnosed Claimant with panic disorder with agoraphobia, major depressive disorder, generalized anxiety disorder and borderline intellectual functioning (Tr. at 644-646).

To establish a disability of mental retardation under Appendix 1 Listing 12.05C, a claimant must establish "a valid verbal performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpt., P, Listing § 12.05C. The Commissioner is required to use the lowest I.Q. score in comparing the results of

multiple test scores, such as WAIS, to the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c). The second prong to establish disability under Listing 12.05C requires that a claimant have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ found that Claimant does not have a mental or physical impairment that significantly affects his ability to perform work activities (Tr. at 30). Therefore, Claimant did not satisfy the second prong necessary to establish disability under Listing 12.05C. Dr. Buban, an impartial medical expert, testified at the administrative hearing that upon reviewing Claimant's medical and school records and upon hearing the Claimant's testimony, she found the record to be "extremely inconsistent" (Tr. at 36). Dr. Buban testified that "her opinion is based on the entire record and the claimant has restrictions, but there is no evidence to support meeting or equaling a listing." (*Id.*)

Credibility Determination

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (Tr. at 32). On January 26, 2010, Nohl Braun, M.D., conducted a comprehensive psychiatric evaluation of Claimant (Tr. at 624). Dr. Braun judged him to be of average or above-average intelligence based on his history and mental status exam. On February 23, 2010, Claimant saw Dr. Braun for a medical check-up. Dr. Braun noted that Claimant had no anxiety, no complaint of mood swings and was making good progress on his medications. Dr. Braun saw Claimant again on May 18, 2010, at which time he noted

that Claimant did not express or complain of mood swings, appeared confident and continued to make good progress on his medications.

On November 2, 2010, Claimant saw Dr. Braun, who noted that Claimant had no anxiety but appeared to display drug-seeking behavior. Dr. Braun noted that Claimant became irritated when he refused to increase Claimant's dosage for the prescription medication Xanax (Tr. at 632). Dr. Braun noted that Claimant continued to argue, which he categorized as not characteristic for people experiencing anxiety. On December 23, 2010, Plaintiff saw physician's assistant Shelley Richards, (hereinafter, PA Richards), who worked with Dr. Braun. She noted that Claimant was doing much better than during his previous visit and although he appeared depressed, he was alert and oriented and his memory and concentration were good.

Dr. Braun and his physician's assistant, Shelly Richards continued to treat Claimant on March 25, 2011. PA Richards noted Claimant had good eye contact, his mood was normal, his affect was broad, he was alert and oriented and his memory and concentration were normal (Tr. at 670). On April 25, 2011, Claimant's mood was depressed, he was alert and oriented, he made good eye contact, his memory and concentration were normal and he was doing fair and tolerating his medication well (Tr. at 658). Dr. Braun noted that Claimant requested more Xanax again (Tr. at 658-659). Dr. Braun refused to prescribe additional Xanax and informed Claimant that he could seek treatment with another doctor if he wanted additional medication. A urinalysis performed on April 25, 2011, showed that Claimant was positive for THC, Benzodiazepine, Oxycodone and other opiates (Tr. at 659). On May 25, 2011, Dr. Braun and PA Richards saw Claimant and noted that he had good eye contact, and his memory and concentration were normal. His mood was depressed (Tr. at 656).

12

I Derakhshan, Neurologist, began treating Claimant on July 24, 2009, for migraine headaches. Dr. Derakhshan prescribed Norco for back pain. The ALJ's decision points to a note in Dr. Derakhshan's treatment records reporting that he had received a phone call stating that Claimant was selling his Norco on the street (Tr. at 35, 429). The ALJ stated at the administrative hearing that Claimant has "been accused, and not anonymously, of selling Norco[4] on the street" (Tr. at 64). Claimant testified that he asked for an increase in his medications because he has built up a tolerance to them (Tr. at 64-65). The ALJ's decision states "there is clear evidence of drug seeking behavior throughout this record" (Tr. at 35). The ALJ's decision concludes that this behavior "reflects poorly on the Claimant's credibility." (*Id.*)

Additionally, Claimant testified to drawing unemployment approximately from the fourth quarter of 2009 to the first quarter of 2011. The ALJ pointed out that in order to draw unemployment, Claimant must have represented that he was capable of working. The ALJ asked Claimant if he applied for jobs while drawing unemployment (Tr. at 59). Claimant responded that he had applied for fast food, caregiver and miscellaneous jobs but he "guessed [he] didn't meet the requirements." (*Id.*)

The ALJ found that Claimant's activities of daily living were not as limited to the extent expected given Claimant's complaints. Claimant maintains his hygiene and self-care. Claimant drives a car, pays bill, counts change, performs light cleaning in his home and shops in stores for food and personal items. Claimant reported to taking care of his pet cat (Tr. at 306).

---

[4] Norco contains a combination of acetaminophen and hydrocodone.

Vocational Expert's Testimony

On August 13, 2010, Shanna Sutler performed a Vocational Consultation Analysis of Claimant (Tr. at 313). Ms. Sutler reported Claimant to have no physical restrictions. She listed Claimant's mental limitations to be non-severe and reported Claimant as being able to perform a one to two-step activity. Ms. Sutler found that although Claimant could not perform his past work, he could perform other work such as laundry worker, drier operator and dry cleaner helper. (*Id.*)

At the administrative hearing, the ALJ asked the Vocational Expert (hereinafter, VE) if jobs existed in significant numbers in the national economy that someone with Claimant's age, education, past relevant work and RFC, as stated above, could perform (Tr. at 81-82). VE Cecilia Thomas testified that such a person could perform light jobs including a cleaner, meter reader and price marker (Tr. at 82). Based on VE Thomas' testimony and VE Sutler's Vocational Consultation Analysis, the ALJ ruled that Claimant could perform work in the national economy, and therefore, he was not disabled under the Act (Tr. at 37-39). Pursuant to SSR 00-4p[5], VE Thomas' testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

The ALJ's decision was issued on October 11, 2011. The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of the ALJ. Contrary to Claimant's assertions that the ALJ failed to consider his impairments in combination, the ALJ's decision reflects an adequate

---

[5] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

consideration of his impairments. The ALJ appropriately weighed the evidence of record in its entirety to determine that Claimant failed to demonstrate a mental or physical impairment that significantly affects his ability to perform work activities as required in the second prong of the disability determination for mental retardation under Listing 12.05C. The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2013).

The ALJ addressed Dr. Goudy's findings and explained why he afforded them little weight based on their inconsistency with the record as a whole and their over-reliance on Claimant's self-reported complaints. The ALJ addressed Dr. Goudy's findings at several points throughout the decision. For example, the ALJ noted that although Dr. Goudy opined that Claimant was argumentative and based that as one of the justifications for assigning him a marked impairment in social functioning, Ms. Durham and consultative examining physician Alfredo Velasquez, M.D.[6], both found that Claimant interacted appropriately on examination (Tr. at 28-29, 379, 488). The ALJ further pointed out that Dr. Goudy based his report, in part, on inconsistent statements made by Claimant regarding the severity of his agoraphobia symptoms and frequency of his panic attacks (Tr. at 34, 641). The ALJ noted that Claimant was not treated by Dr. Goudy (Tr. at 36, 640). The ALJ addressed Dr. Goudy's findings and gave his opinion little weight.

The ALJ gave great weight to Dr. Buban's opinion because it was based on the totality of the record (Tr. at 37). Dr. Buban specifically stated that she considered all of Claimant's alleged impairments. Dr. Buban testified that she reviewed the entire record,

---

[6] Alfredo Velasquez, M.D., performed a consultative examination on Claimant related to his alleged physical impairments on July 12, 2010 (Tr. at 487-492).

15

listened to Claimant testify at the hearing and was able to form an opinion as to Claimant's psychological status (Tr. at 72). Claimant did not object to Dr. Buban testifying as an expert (Tr. at 72). Dr. Buban testified that although Dr. Goudy opined that Claimant met a disability under the Listings for mental impairment, Dr. Goudy had not conducted any testing (Tr. at 73). Dr. Buban noted that the evidence on the record indicated Claimant had a largely stable condition without a lot of symptoms (Tr. at 75). The ALJ specifically asked Dr. Buban if any of Claimant's impairments "either individually or in combination meet or equal the listings" (Tr. at 75). Dr. Buban testified that she based her opinion on the entirety of the record and that Claimant did not meet a Listing. (*Id.*) Although Claimant argues that Dr. Buban only considered his agoraphobia, and not his other conditions, Dr. Buban's testimony demonstrates that she considered the entire record and referred to Claimant's lack of agoraphobia as one factor in her decision. As such, the ALJ's weight given to Dr. Buban's opinion is supported by substantial evidence.

The ALJ found that Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b), with additional limitations (Tr. at 30). The ALJ found Claimant to be fully capable of learning, remembering and performing simple and detailed work tasks involving simple and routine work instructions with no reading requirements above the elementary school level. The ALJ held these tasks should be performed in a relatively static and low-stress work environment, defined as one in which there are no strict quota requirements, production pace, strict time standards or over the shoulder supervision. These work tasks should also require no fine hearing discrimination. The ALJ held that Claimant may have occasional contact with supervisors and co-workers, but should have minimal

to no contact with the public. The ALJ stated that Claimant would perform optimally in small group settings where instructions can be given face-to-face. Accordingly, The ALJ denied Claimant's applications for DIB and SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter: March 10, 2014.**

_____
Dwane L. Tinsley
United States Magistrate Judge